# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**WILLIE LEE MADDEN, JR.**                                                        **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO.  1:08cv221-LG-JMR**

**HARRISON COUNTY, GAYLE PARKER,**
**MICHELLE CASANO and JOHN DOES 1-20**                                    **DEFENDANTS**

---

## AMENDED REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [33-1] for Summary Judgment filed on April 17, 2009, on behalf of Defendants Harrison County, Gayle Parker, and Michelle Casano (hereinafter "Defendants").  Defendants' Motion is accompanied by a Memorandum in support as well as a Supplement [35-1].  Plaintiff filed his Response [41-1] in Opposition to the Motion and Supplement on August 3, 2009.  The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that the Defendants' Motion [33-1] for Summary Judgment be granted.

This Court entered a Report and Recommendation on November 16, 2009 regarding Defendants' present Motion [33-1] for Summary Judgment.  Plaintiff filed an Objection to this Court's R&R on January 7, 2010.  Upon review of Plaintiff's Objection [44-1] to this Court's R&R, this Court, out an abundance of caution, finds it imperative to include an analysis of a denial of access to courts claim.  Therefore, the Report and Recommendation entered on November 16, 2009 is hereby withdrawn and this Amended Report and Recommendation is entered.

## STATEMENT OF THE CASE

Plaintiff filed this *pro se* Complaint on May 29, 2008, alleging violations of his civil rights,

pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants failed to transcribe his guilty plea and sentencing transcript from Harrison County Circuit Court after he had paid for such.

On June 28, 2004, Plaintiff pled guilty to transferring a controlled substance in the Circuit Court of Harrison County, Mississippi, Second Judicial District. (*See* Defs.' Mot. [33-1] Summ. J.; *see also* Ex. "A" Attach. Defs.' Suppl. [35-2].) He was sentenced as a habitual offender to serve fifteen (15) years in the custody of the Mississippi Department of Corrections. Defendant Casano was the official court reporter for Plaintiff's plea and sentencing hearing. *Id*. She became aware, at some point prior to May 2, 2005, that Plaintiff wanted a transcript of the hearing held in circuit court on June 28, 2004. Thus, Defendant Casano, on May 2, 2005, wrote Plaintiff and informed him that the cost of the transcript would be $115.00. (*See* Ex. "1" Attach. Defs.' Mot. [33-2] Summ. J.) She informed Plaintiff to send her a money order to her address and she would transcribe the hearing and mail the transcript to Plaintiff within a week of payment. *Id*. Defendant Casano further wrote Plaintiff on January 4, 2006, and informed him that court reporters were not required to prepare transcripts for indigent inmates without an official appeal or an order from a judge, and that if a transcript is requested, that is not an appeal, they charge the same amount to anyone requesting the transcript. (*See* Ex. "2" Attach. Defs.' Mot. [33-2] Summ. J.) Defendants claim it is undisputed that there was neither a court order nor an appeal pending in Plaintiff's criminal case requiring Defendant Casano to prepare the transcript free of charge. (*See* Defs.' Mot. [33-1] Summ. J. 3.)

Plaintiff claims on April 17, 2006, a check was issued by MDOC from his inmate trust account in the amount of $115.00 and made payable to Defendant Casano. (*See* Pl.'s Resp. [7-1] Order; *see also* Ex. "B-2" Attach. Pl.'s Resp. [41-2] Mot.) Plaintiff claims the transcript was requested for a post-conviction collateral relief motion. (*See* Pl.'s Resp. [7-1] Order.) Also, Plaintiff notes that he was not proceeding *in forma pauperis*, but was paying for a copy of the transcript. *Id*.

Defendant Casano asserts that she never received payment for the transcript. (*See* Ex. "A" Attach. Defs.' Suppl. [35-2].)  On July 5, 2006, Plaintiff wrote Defendant Casano claiming that he issued her a check for $115.00 on April 17, 2006, but had not received the transcript. (*See* Ex. "C" Attach. Defs.' Mot. [33-2] Summ. J.)  Defendant Casano responded to Plaintiff on July 31, 2006, stating that she had searched her paperwork and checked with the clerk's office but could not find a check or letter containing such. (*See* Ex. "3" Attach. Defs.' Mot. [33-2] Summ. J.)  She requested Plaintiff check and see if the letter had been returned or if he could trace its whereabouts. *Id*.

Plaintiff filed the instant action and alleges that Defendant Casano willfully neglected to perform her duty by not transcribing the hearings after he had paid for such. (*See* Pl.'s Compl.)  Also, Plaintiff claims that Defendant Parker, Circuit Clerk of Harrison County, "refused to give [him] certified copies of papers [he] filed for... [and for] fail[ing] to deposit funds..." *Id*.  Plaintiff seeks a certified copy of his plea and sentencing transcript and fifteen million dollars ($15,000,000.00) in damages. *Id*.  Plaintiff notes that he is suing Defendants in their official and supervisory capacities.

<u>**STANDARD OF REVIEW**</u>:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987).  "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.  Furthermore, it is well settled in this

circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985). Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or

custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc.*

*Services*, 436 U.S. 658, 694 (1978).  *Monell* and later decisions reject municipal liability predicated

on *respondeat superior*, because the text of section 1983 will not bear such reading.  *Board of*

*Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  "Congress did not intend

municipalities to be held liable unless action pursuant to official municipal policy of some nature

caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the

office that the employee holds and not against the actual employee.  *See Kentucky v. Graham*, 473

U.S. 159, 165 (1985).  The three requirements for municipal liability outlined in *Piotrowski* are

necessary in order to distinguish between individual violations by local employees and those that

can be fairly attributed to conduct by the governmental  entity itself.  *See Piotrowski*, 237 F.3d at

578-79.  The United States Supreme Court has clearly emphasized the necessity of an official

policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury
> inflicted solely by its employees or agents. Instead, it is when
> execution of a government's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as an
> entity is responsible under § 1983.

*Monell*, 436 U.S. at 695.  Therefore, municipalities may not be held liable for acts of lower level

employees, but may be held liable for constitutional violations committed pursuant to an official

policy or custom.  *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality

was the "moving force" behind the alleged violation of a constitutional right; he must also establish

that the municipality was "deliberately indifferent" to the known consequences of the policy.  *Id*. at

580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264.

The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## APPLICABLE LAW & ANALYSIS:

The Court begins by noting that Plaintiff, in his Complaint [1-1], lists several criminal statutes that he asserts Defendants have violated, thereby, establishing causes of action to bring this 42 U.S.C. § 1983 suit. The statutes that Plaintiff claims Defendants violated are MISS. CODE ANN. § 97-11-17, clerk refusing to give certified copy of paper; MISS. CODE ANN. § 9-1-43, punishment for failure to deposit funds; MISS. CODE ANN. § 75-24-20, unfair or deceptive practices; and MISS. CODE ANN. § 9-13-45, penalty for court reporter's wilful neglect of duty. The above statutes all note that a violation of said statute is a misdemeanor offense. Plaintiff also alleges obstruction of justice, however, he does not specify whether he asserts Defendants violated the federal statute, 18 U.S.C. § 1503, or the state statute, MISS. CODE ANN. § 97-9-55. Both statutes make a violation a felony offense, however, regardless of which statute Plaintiff is asserting, for reasons discussed below, Plaintiff is not entitled to relief from any criminal statute in this section 1983 suit.

Bringing criminal charges against defendants is not relief available under 42 U.S.C. § 1983. *Jones v. Conway*, 1992 U.S. Dist. LEXIS 11156, No.Civ.A. 92-3883, 1992 WL 185578, at *1 (E.D.Pa. July 21, 1992). "Criminal statutes can neither be enforced by civil action nor by private parties." *Hassell v. United States*, 203 F.R.D. 241, 1999 WL 444554, at *2 (N.D.Tex. 1999). There is no constitutional right, furthermore, to have someone criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Plaintiff clearly has not stated a claim with respect to the criminal charges alleged against these Defendants because a private party may not enforce criminal statutes through a civil action. *Mass v. McDonald's Corp.*, 2004 U.S. Dist. LEXIS 23212, 2004 WL 2624255, at *5 (N.D. Tex. Nov. 12, 2004). Section 1983 affords a remedy to those who are deprived, as a result of state action, of *federally protected rights*. *See White*, 660 F.2d at 693 (emphasis added). Construing Plaintiff's Complaint and other pleadings liberally, Plaintiff's allegations more closely resemble a due process violation claim and a denial of access to courts claim. Therefore, this Court will treat Plaintiff's allegations as such.

## I.   Denial of Access to Courts:

Plaintiff claims in his Objection [44-1] to the Report and Recommendations that the Defendants obstructed his access to the courts by failing to provide him with transcripts after he had paid for them. (*See* Obj. [44-1] R&R. 2.) Plaintiff asserts that the transcript of his guilty plea and sentencing hearing was necessary for the presentation of his post-conviction motion and the appeal of the trial court's denial of that post-conviction motion. *Id.* Plaintiff claims that he was illegally sentenced to fifteen (15) years as a habitual offender because the plea agreement between him and the district attorney was for ten (10) years with the habitual offender portion dropped. *Id.* at 3. Further, Plaintiff alludes that his plea was not voluntarily or knowingly given because he was under the stress of family illness and taking medication for his own illnesses. *Id.* Essentially, in his pleadings, Plaintiff claims a transcript of his

guilty plea and sentencing hearing was necessary to present the above stated claims in his post-conviction motion and subsequent appeal. However, it is undisputed that Plaintiff properly filed a post-conviction motion in the trial court and properly perfected an appeal to the court of appeals where the merits of all his claims were ruled upon. *See Madden v. State*, 991 So.2d 1231 (Miss.Ct.App. 2008).

An inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). In other words, the prisoner must show that his legal position has been prejudiced. *See Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). The prisoner must show that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). Before a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate "that his position as a litigant was prejudiced by his denial of access to the courts." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (quoting *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993)). Although prisoners have a constitutionally protected right of access to the courts; *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); the Supreme Court has not extended the right to encompass more than the ability to prepare and transmit a necessary legal document to a court. *See Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The *Lewis* court limited the holding in *Bounds* by disclaiming statements in that case suggesting that the state "must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court." *Lewis*, 518 U.S. at 351 (emphases in original).

Plaintiff's Complaint is dedicated to challenging the constitutionality of not receiving a hearing transcript for a post-conviction collateral relief motion. However, Plaintiff fails to allege the existence of an official policy causing violations of his constitutional rights. Therefore, the Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or

custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated instance of negligent conduct, which is insufficient to support the instant official capacity claim against the Defendants. Accordingly, for this reason, the Court recommends that summary judgment be granted in favor of the Defendants on Plaintiff's official capacity claims.

Also, not only must Plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. It is not the same as negligence. *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). Negligent conduct by an official cannot be the basis for a due process claim. *Id*. at 646. Plaintiff has offered no evidence creating a genuine issue of material fact as to whether the Defendants were deliberately indifferent to any known consequences of an existing unconstitutional policy. Thus, the Defendants are not liable to Plaintiff in their official capacities. Plaintiff notes that he brings this suit against Defendant Casano in her official and supervisory capacity, however, because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Casano in her individual capacity as well. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006).

As discussed in detail *infra*, Plaintiff was not entitled to a free copy of the transcript but was required to purchase it through the official court report of his guilty plea and sentencing hearing, Defendant Casano. Plaintiff asserts that he sent Defendant Casano payment for the transcript but that he never received the transcript. Plaintiff claims the transcript was necessary for presenting his claims in a post-conviction motion to the trial court and on appeal of the trial court's denial of that post-conviction motion. Those claims being that his plea was not given knowingly or voluntarily and that his sentence was illegal.

As stated earlier, for Plaintiff to succeed on a denial of access to courts claim he must show actual injury, which includes evidence proving that the alleged denial of a transcript hindered his efforts to pursue a non frivolous case. *See McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998). Plaintiff must demonstrate that his ability to prepare and transmit a necessary legal document to a court was hindered. *Brewer*, 3 F.3d at 821. The Court notes that Plaintiff alleges he mailed payment to Defendant Casano for the transcript on April 17, 2006. At the Omnibus Hearing held in this Court on October 29, 2008, Plaintiff informed the Court that he filed his motion for post-conviction relief in the Harrison County Circuit Court in June 2005.[1] The trial court ruled on Plaintiff's post-conviction motion on December 30, 2006. *See Madden*, 991 So.2d at 1231. Plaintiff filed his notice of appeal from the trial court's decision on his post-conviction motion on January 26, 2007. *Id.* In the Mississippi Court of Appeals, Plaintiff raised several issues, including whether he received a legal sentence and whether or not his guilty plea was voluntarily and intelligently entered. *Id.* These are the same issues that Plaintiff claims a copy of his transcript would have supported. However, the court of appeals found that the record without a transcript was adequate to address Plaintiff's claims and that a copy of the guilty plea and sentencing transcript was not necessary to decide Plaintiff's post-conviction motion. *Id.* at 1234. The court found that Plaintiff's allegation that his plea was not knowingly and voluntarily entered was totally contradicted by a plea petition that Plaintiff signed and submitted to the trial court. *Id.* The court found that:

> [Plaintiff] signed and presented to the circuit court a petition to enter a plea of guilty. The petition clearly states the minimum and maximum sentences to be zero to thirty years for the transfer of a controlled substance. It also states that [Plaintiff] will be sentenced as a

---

[1]Even though Plaintiff may have filed his post-conviction motion with the trial court before he attempted to obtain a copy of the transcript, the Court notes that Plaintiff's post-conviction motion was not ruled on by the trial court until December 30, 2006. Therefore, conceivably, Plaintiff had time to supplement his motion upon receipt of the transcript.

habitual offender and that the sentence will run day-for-day. [Plaintiff] indicated in the petition that his physical and mental health was satisfactory and that he was not under the influence of any drugs or intoxicants at the time of the document's signing.

*Id*. at 1235. Further, the court found that Plaintiff's plea petition stated that he:

has been convicted of one or more felonies in the past, specifically two convictions for possession of a controlled substance during 1995. [Also, Plaintiff] made the following statement in his plea petition: "I admit my two prior felony convictions as in indictment." The petition states that [Plaintiff] will be sentenced as a habitual offender and the sentence will be served day-for-day.

*Id*. at 1236.

The court held that Plaintiff's arguments were contradicted by the plea petition, and that although the plea petition was not an oral statement given in open court, "it was a sworn document presumptively prepared with an appreciation of its fateful consequences." *Id*. (quoting *Ward v. State*, 879 So.2d 452, 455 (Miss.Ct.App. 2003). Similar to sworn statements made before a court, a plea petition may be used to discredit post-plea allegations. *Ward*, 879 So.2d at 455. The court further found that:

[Plaintiff's trial] attorney also signed a certificate of counsel which states that he fully explained to [Plaintiff] the allegations of the indictment and the maximum and minimum sentences the circuit court could impose. It was the attorney's opinion that the plea was voluntarily made and that the defendant was mentally and physically competent and understood the proceedings. The certificate further states that the attorney had no reason to believe that [Plaintiff] was presently under the influence of drugs or intoxicants.

*Madden*, 991 So.2d at 1235.

By Plaintiff's own admissions, it is apparent that Plaintiff had unimpeded access to the Mississippi courts. He filed a motion for post-conviction in the trial court. After the trial court's denial, he appealed to the court of appeals where the merits of his allegations were ruled on by the

court. Several unpublished decisions in the Fifth Circuit dealt with similar facts, where a plaintiff claimed he did not have access to certain legal materials that would support his allegations, and found no constitutional violation. In *Littleton v. Grimes*, the court affirmed the dismissal of a denial-of-access claim in which a prisoner's legal papers were confiscated but, despite the confiscation, the prisoner "was able to prepare and timely submit a lengthy and thorough COA application." 286 F. Appx. 887, 888 (5th Cir. 2008). In *Gray v. Williams*, a prisoner alleged that his warden's failure to return certain documents attached to an administrative appeal denied him access to the courts. 31 F. Appx. 155 (5th Cir. 2001). The court affirmed the district court's rejection of this theory because the warden's actions did not prevent the prisoner from filing a related civil action and appeal. *Id.*; *see also Mann v. Smith*, 796 F.2d 79, 84 (5th Cir. 1986) (rejecting a right-of-access argument where the prisoner "in fact filed a detailed civil complaint."). Here, like the prisoners in the cases above, Plaintiff's lack of a transcript of his guilty plea and sentencing hearing did not prevent him from filing a post-conviction motion. In fact, Plaintiff filed his post-conviction motion in the trial court and subsequent appeal despite his lack of a transcript. It is clear that Plaintiff enjoyed full access to the Mississippi courts and that he was not prevented from raising any claim of relief in a post-conviction motion and appeal.

Furthermore, a copy of Plaintiff's guilty plea and sentencing transcript was not necessary for his post-conviction motion and appeal, as the Mississippi Court of Appeals held. *See Madden*, 991 So.2d at 1234. The court stated that based on the record "the transcript [was] not necessary to decide [Plaintiff's] appeal." *Id.* Also, previously while sitting on the Mississippi Court of Appeals, Judge Leslie Southwick wrote that "the post-conviction relief statutes... envision that a transcript will not be needed in every instance in which a post-conviction petition claim is made of a defect in the guilty plea hearing." *Ward*, 879 So.2d at 455. In several cases, the Mississippi Supreme Court has relied at least in part on the guilty plea petition to support the denial of a post-conviction relief petition. *See, e.g.,*

*Harris v. State*, 757 So.2d 195, 200 (Miss. 2000) (Harris's guilty plea petition enumerated the rights which Harris was forfeiting; the petition and the remainder of the record supported that the plea was intelligently and voluntarily given); *Jones v. State*, 747 So.2d 249, 251 (Miss. 1999) (Jones offers nothing to support his claim that he was on medication when he pled; in his plea petition, Jones asserted that he was not under the influence of drugs). Plaintiff's allegations were contradicted by his sworn plea petition that he signed and submitted to the trial court and by a certificate signed by his trial counsel. "Solemn declarations in open court carry a strong presumption of verity." *Truitt v. State*, 958 So.2d 299, 301 (Miss.Ct.App. 2007) (the court, without the aid of the transcript, found that plaintiff's plea petition contradicted his allegations of involuntary plea and improper indictment in his post-conviction motion) (citing *Harris v. State*, 806 So.2d 1127, 1130 (Miss. 2002)).

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this review, fail to demonstrate that the Defendants denied him access to the courts as that term is defined in the foregoing cited jurisprudence. As stated above, the Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer*, 3 F.3d at 821; *see also Lewis*, 518 U.S. at 349-55; *Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); *and Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir. 1996). Although Plaintiff has asserted he was prevented from purchasing a transcript in his criminal proceedings, he has not shown this prevented him from presenting argument concerning his allegations of an illegal sentence or a plea not given knowingly or voluntarily. Instead, Plaintiff enjoyed unimpeded access to the Mississippi courts where he filed a motion for post-conviction and a subsequent appeal. As previously noted, the right of access to the courts is limited to the initiation of a court action, and does not include the right to litigate effectively or successfully once in court. *See Lewis*, 518 U.S. at 354. Therefore, Plaintiff has failed to establish an access to courts constitutional violation.

## II. Due Process Violation:

"Due process can be denied by any substantial retardation of the appellate process, including an excessive delay in the furnishing of a transcription of testimony necessary for completion of an appellate record." *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980). However, not every delay in the appeal of a case, even an inordinate one, violates due process. *Id*. at 303. To determine whether such a delay violates due process, the Court must examine four factors: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id*. at 308 n.8. Of these factors, the most important factor is prejudice to the defendant. *See United States v. Bermea*, 30 F.3d 1539 (5th Cir. 1994). There are three main types of potential prejudice that may result from appellate delay: (1) extended oppressive incarceration pending appeal; (2) the anxiety and concern of the convicted party awaiting the outcome of the appeal; and (3) impairment of the convicted party's grounds for appeal or the viability of his defenses in the event of retrial. *Rheuark*, 628 F.2d at 308 n.8.

There are two primary ways in which a criminal defendant may challenge a trial court proceeding: (1) a direct appeal from a conviction, or (2) a proceeding under the Post Conviction Relief Act. *Smith v. State*, 742 So.2d 1188 (Miss.Ct.App. 1999) (citing *Fleming v. State*, 553 So.2d 505, 506 (Miss. 1989), superceded by statute). Post-conviction proceedings are for the purpose of bringing to the trial court's attention facts not known at the time of judgment. *Williams v. State*, 669 So.2d 44, 52 (Miss. 1996). The post-conviction relief process is not a substitute for direct appeal, but is a process for raising issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time.

As stated earlier, Plaintiff's Complaint is dedicated to challenging the constitutionality of not

receiving a hearing transcript for a post-conviction collateral relief motion, not an appeal.  However, Plaintiff fails to allege the existence of an official policy causing violations of his constitutional rights. Therefore, the Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  At best, Plaintiff's assertion amounts to an isolated instance of negligent conduct, which is insufficient to support the instant official capacity claim against the Defendants. Accordingly, for this reason, the Court recommends that summary judgment be granted in favor of the Defendants on Plaintiff's official capacity claims.

Also, not only must Plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy.  It is not the same as negligence. *Hare*, 74 F.3d at 648.  Negligent conduct by an official cannot be the basis for a due process claim. *Id*. at 646.  Plaintiff has offered no evidence creating a genuine issue of material fact as to whether the Defendants were deliberately indifferent to any known consequences of an existing unconstitutional policy.  Thus, the Defendants are not liable to Plaintiff in their official capacities.

Plaintiff notes that he brings this suit against Defendant Casano in her official and supervisory capacity, however, because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Casano in her individual capacity as well.  *See Williams,* 2006 WL 1581908.  Nevertheless, the Fifth Circuit has held in *Slavin v. Curry*, that official court reporters are entitled to qualified immunity under § 1983 if "they 'can show that [they were] acting pursuant to [their] lawful authority and following in good faith the instructions of rules of the Court and [were] not in derogation of those instructions or rules.'" 574 F.2d 1256, 1265-66 (5th Cir. 1978), modified on other grounds, 583 F.2d 779 (5th Cir. 1978), overruled on other grounds, *Sparks*

*v. Duval County Ranch Co.*, 604 F.2d 976 (5th Cir. 1979) (en banc), *aff'd* 449 U.S. 24, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980) (quoting *McLallen v. Henderson*, 492 F.2d 1298, 1300 (8th Cir. 1974)).

According to Mississippi law, on direct appeal an indigent defendant is entitled to a free transcript. *Walton v. State*, 752 So.2d 452 (Miss.Ct.App. 1999) (citing *Fleming v. State*, 553 So.2d 505, 507 (Miss. 1989)). However, when the defendant pleads guilty, he bypasses the right to a direct appeal, and forfeits the right to a free transcript. *Id.*; *see also U.S. v. MacCollom*, 426 U.S. 317, 325, 48 L. Ed. 2d 666, 96 S. Ct. 2086 (1976). The defendant may still obtain a free transcript for purposes of a post-conviction collateral relief motion, however, certain prerequisites must be met before the State is required to furnish a free copy. *Walton*, 752 So.2d at 456. A trial judge may award a defendant a free copy of his guilty plea transcript if the defendant shows that he will be prejudiced on appeal by not having prior access to such transcript. *Id.* (citing *Taylor v. State*, 682 So.2d 359, 366 (Miss. 1996). This prejudice can be proven by showing specific need or proving the transcript was necessary to decide a specific issue. *Walton*, 752 So.2d at 456 (citing *Fleming*, 553 So.2d at 507). If the defendant fails to prove substantial need, the State is not required to furnish a free copy of the transcript from the guilty plea hearing. *Id.*

In the case *sub judice*, Plaintiff was not appealing his criminal conviction or sentence but was instead filing a post-conviction motion. Furthermore, Plaintiff was not awarded a free transcript by a judge for purposes of his post-conviction collateral relief motion. In fact, the trial judge denied Plaintiff's request for a free transcript and that denial was upheld on appeal. *See Madden*, 991 So.2d at 1234 *cert. denied*, 2008 Miss. LEXIS 507 (Miss., Oct. 9, 2008). The Mississippi Court of Appeals found that Plaintiff's guilty plea and sentencing transcript was not necessary to decide the merits of Plaintiff's claims in his post-conviction motion. *Id.* Plaintiff acknowledges that he was not seeking a free transcript, but instead claims he paid for a transcript that was never delivered to him. Plaintiff

claims a check was issued and sent to Defendant Casano by MDOC, using the funds from his inmate account. In support, Plaintiff submits his Inmate Account Statement from the Mississippi Department of Corrections. (*See* Ex. "B-2" Attach. Pl.'s Resp. [41-2] Mot. Summ. J.) Also, Plaintiff presents the Withdrawal Request he filed with MDOC on April 13, 2006, requesting $115.00 be taken out of his account and issued to Defendant Casano at her address. (*See* Ex. "B-3" Attach. Pl.'s Resp. [41-2] Mot. Summ. J.) Plaintiff's inmate account statement clearly shows a withdrawal of $115.00 from his account on April 17, 2006, to be paid to Michelle Casano, Official Court Reporter. *Id.* Defendants have presented an affidavit from Defendant Casano where she states that she "never received payment for the transcript and thus... never transcribed [the hearing]." (*See* Ex. "A" Attach. Defs.' Suppl. [35-2].)

The Court notes here, that if the evidence stated above were the only evidence before the Court, there might be a genuine issue of material fact as to whether Defendant Casano received Plaintiff's payment and was in derogation of her duties as a court reporter in not transcribing Plaintiff's hearing, assuming Defendant Casano's acts or omissions amounted to more than negligence. However, this is not the only evidence before the Court. On July 5, 2006, Plaintiff wrote Defendant Casano claiming that he had sent her payment of $115.00 for the transcript but has not received any transcript. (*See* Ex. "C" Attach. Defs.' Mot. [33-2] Summ. J.) Defendant Casano, upon receipt of Plaintiff's letter, searched her paperwork and the circuit clerk's office for Plaintiff's alleged payment and letter, however, she did not find such. (*See* Ex. "3" Attach. Defs.' Mot. [35-2] Summ. J.) Further, Defendant Casano wrote Plaintiff on July 31, 2006, and informed him that she had not received the payment, and she requested Plaintiff try and determine if the payment had been returned to him or if he could trace its whereabouts. *Id.* Plaintiff informed this Court, at an Omnibus Hearing on October 29, 2008, that after not receiving the transcript, he filed an administrative request with MDOC to find out what happened to his money, and the $115.00 was deposited back into Plaintiff's account around September 2006. (*See* Ex. "B"

Attach. Defs.' Mot. [33-2] Summ. J.)

Plaintiff contends that his payment was mailed to Defendant Casano and thus he completed the process of requesting and paying for a transcription of his hearing. This Court acknowledges Plaintiff's evidence that shows he requested MDOC to withdraw $115.00 from his inmate account and mail it to Defendant Casano. However, this Court has been presented with affirmative proof that Defendant Casano did not receive Plaintiff's payment for the transcript. The $115.00 that Plaintiff claims was withdrawn from his account and mailed to Defendant Casano was clearly deposited back into Plaintiff's inmate account after he inquired with MDOC about the check. (*See* Ex. "B" Attach. Defs.' Mot. [33-2] Summ. J.) Without making assumptions based on evidence not before the Court, this Court finds this evidence coupled with Defendant Casano's affidavit and July 31, 2006 letter to be undeniable proof that Defendant Casano did not receive payment for the transcript. Further, after Plaintiff's July 5, 2006 letter requesting his transcript, Defendant Casano promptly wrote Plaintiff and informed him that she had not received his $115.00 payment. Defendant Casano also searched her paperwork and the circuit clerk's office for Plaintiff's payment; after she did not find it, she requested Plaintiff attempt to determine its whereabouts. Most befuddling to this Court is why Plaintiff, upon knowledge that the $115.00 was deposited back into his inmate account, did not then again attempt to reissue payment and obtain a copy of the transcript.[2] Regardless, this Court does not believe there to be an issue of fact regarding whether Defendant Casano received Plaintiff's payment, and thus Plaintiff has not established a recognizable constitutional violation.

---

[2]The Court notes that the funds from Plaintiff's $115.00 payment was deposited back into his MDOC inmate account in September 2006, and that the trial court did not rule on Plaintiff's post-conviction motion until December 30, 2006. Therefore, it was entirely feasible for Plaintiff to reissue his request and payment to Defendant Casano and supplement his post-conviction motion before the trial court ruled on his motion.

However, assuming that Defendant Casano did receive Plaintiff's payment, and this is a copious assumption since Plaintiff did not send his payment by certified mail and there is absolutely no evidence that any defendant actually received Plaintiff's payment, this Court finds that Defendant Casano is entitled to qualified immunity. In *Slavin*, the Fifth Circuit held that official court reporters are entitled to qualified immunity under § 1983 if they can show that they were acting pursuant to their lawful authority and following in good faith the instructions or rules of the court and were not in derogation of those instructions or rules. 574 F.2d at 1265-66. This Court finds that at all times relevant to this suit Defendant Casano was acting pursuant to her statutory authority and followed the rules of court in good faith. Defendant Casano was under no obligation to transcribe Plaintiff's hearing transcript until she received payment. A judge had not ordered her to transcribe Plaintiff's hearing, nor was an appeal of Plaintiff's conviction pending. The Mississippi Court of Appeals ruled that Plaintiff was not entitled to a free transcript. *See Madden*, 991 So.2d at 1234. Therefore, Plaintiff was not entitled to have Defendant Casano transcribe his plea and sentencing hearing without paying Defendant Casano's fee for the transcription. Thus, Defendant Casano was not acting in bad faith or in derogation of her duties in requiring Plaintiff to pay for transcribing his sentencing hearing.

Plaintiff asserts that, essentially, Defendant Casano refused to transcribe his sentencing hearing after she had received payment for such. If Defendant Casano had received payment from Plaintiff, then she would be under a duty to transcribe Plaintiff's sentencing hearing pursuant to Mississippi statute. *See* MISS. CODE ANN. § 9-13-25. For Defendant Casano to be in derogation of her duties as a court reporter she would have had to have acted in bad faith upon receiving Plaintiff's payment. The Mississippi Supreme Court has characterized bad faith as "conduct which violates standards of decency, fairness or reasonableness." *Burnsed Oil Co., Inc. v. Grynberg*, 320 Fed. Appx. 222 (5th Cir. 2009) (quoting *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992)). Bad faith is more than bad judgment

or negligence: it is "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive" and "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Grynberg*, 320 Fed Appx. at 230 (quoting *Bailey v. Bailey*, 724 So.2d 335, 338 (Miss. 1998)). There is absolutely no evidence before this Court that Defendant Casano, or any defendant, willfully refused to accept Plaintiff's payment. The evidence is to the contrary. Once Defendant Casano became aware that Plaintiff was under the impression that he had paid her for a copy of his sentencing transcript, by way of Plaintiff's July 5, 2006 letter, Defendant Casano searched for the payment and timely informed Plaintiff that she had not, in fact, received his payment. (*See* Ex. "3" Attach. Defs.' Mot. [33-2] Summ. J.) Defendant Casano proposed that Plaintiff search his records and attempt to ascertain whether or not the payment was returned to him. *Id.* Plaintiff never contacted Defendant Casano again. These actions are not suggestive of a sinister motive or a conscious wrong doing, nor do they suggest that Defendant Casano in any way violated the standards of fairness or reasonableness. Just the converse is true; Defendant Casano attempted to assist Plaintiff in locating his payment. She searched her paperwork and then she searched the circuit clerk's office, in the event Plaintiff had mistakenly mailed the payment to the circuit clerk's office instead of to her address. Defendant Casano timely put Plaintiff on notice that she was not in possession of his payment. These actions show that Defendant Casano was acting in good faith following the rules of the court, pursuant to her lawful authority, and that she was not in derogation of her duties. As stated earlier, there is zero evidence that any defendant actually received Plaintiff's payment or that any defendant willfully or intentionally refused to accept or "cash" Plaintiff's payment. After reviewing all the evidence, this Court can only come to the conclusion that Defendant Casano was acting pursuant to her statutory authority and following the rules of the court in good faith. All the evidence before this Court, viewed in a light most favorable to Plaintiff, does not

suggest any willful, intentional action on the part of any defendant to deny Plaintiff due process. Plaintiff claims Defendant Casano refused to deposit funds, however, he presents no evidence that supports this accusation. Nevertheless, the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. *See e.g., Murray v. Mississippi Dep't of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988) *cert. denied*, 489 U.S. 1085, 109 S. Ct. 1545, 103 L. Ed. 2d 849 (1989); *Baker v. McCollan*, 443 U.S. 137, 146-47, 99 S. Ct. 2689, 2695-2696, 61 L. Ed. 2d 433 (1979). Plaintiff has not presented this Court with any evidence of willful action on the part of any Defendant to deny him access to courts or due process. Consequently, this claim of a constitutional violation by Defendant Casano lacks an arguable basis in law.

Furthermore, if this Court were to assume that Defendant Casano received Plaintiff's payment but through her own negligence misplaced or lost Plaintiff's payment, Defendant Casano is still entitled to summary judgment. Negligence will not support a cause of action under section 1983. *Griffith*, 899 F.2d at 1435 (section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care); *see also Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). The due process clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property. *Daniels*, 474 U.S. at 328, 106 S. Ct. at 663 (emphasis in original). The acts or omissions that Plaintiff has alleged against Defendant Casano for failure to provide a transcript that was purchased amount to, at most, mere negligence; however, a negligent act cannot furnish a basis for an action under section 1983. *Id.*

This Court finds that Defendant Casano was under no obligation to transcribe Plaintiff's hearing transcript until she received payment. A judge had not ordered her to transcribe Plaintiff's hearing, nor

was an appeal of Plaintiff's conviction pending. Therefore, Plaintiff was not entitled to have Defendant Casano transcribe his plea and sentencing hearing without paying Defendant Casano's fee for the transcription. While there is evidence that Plaintiff attempted to mail payment to Defendant Casano, Plaintiff has presented no evidence that Defendant Casano actually received a payment of $115.00 from him or that Defendant Casano refused to accept the payment, and furthermore, there is undeniable evidence that Defendant Casano did not receive the payment. Also, there is no evidence in the record that any defendant willfully refused to accept or "cash" Plaintiff's payment. This Court finds that at all times relevant to this suit, Defendant Casano, the official court reporter, was acting pursuant to her statutory authority in good faith. Furthermore, this Court notes that even if Defendant Casano was negligent in mishandling Plaintiff's check, which there is no evidence of such, and thus not transcribing his plea and sentencing transcript, negligence by itself is insufficient to support Plaintiff's § 1983 claim. *See*, *e.g.*, *Daniels*, 474 U.S. at 328 ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."). Therefore, after a careful analysis of Plaintiff's allegation concerning a violation of due process, this Court finds that Defendant Casano is entitled to qualified immunity as to Plaintiff's individual capacity claims.

Plaintiff also asserts in his Complaint that Defendant Parker, Circuit Clerk of Harrison County, refused to give him a certified copy of papers and failed to deposit funds. (*See* Pl.'s Compl. 2.) Other than these allegations, Plaintiff does not state any other claim against Defendant Parker. However, there is no evidence in the record that Plaintiff ever requested Defendant Parker to give him copies of papers or deposit funds. Also, Plaintiff's allegation is in complete contradiction to his claims and evidence that he sent Defendant Casano, the court reporter, requests and payment for his plea and sentencing transcript. (*See* Ex. "A" Attach. Pl.'s Resp. [41-2] Mot. Summ. J.) Furthermore, Plaintiff's

Inmate Account Statement verifies that $115.00 was issued on April 17, 2006 to Defendant Casano and not Defendant Parker. (*See* Ex. "B-2" Attach. Pl.'s Resp. [41-2] Mot. Summ. J.) Also, Plaintiff acknowledges in a letter he wrote to Defendant Parker that the check was issued to Defendant Casano. (*See* Ex. "C" Attach. Pl.'s Resp. [41-2] Mot. Summ. J.) There is no evidence before this Court to support any claim against Defendant Parker. At best, Plaintiff's allegations against Defendant Parker amount to mere negligence, and as explained earlier, negligence will not support a claim under section 1983. *Griffith*, 899 F.2d at 1435. Plaintiff admits he requested Defendant Casano to transcribe his hearings, and he claims he had a check issued in her name. Plaintiff also specifically identifies Defendant Casano's address and claims the payment for the transcript was sent to that address, not Defendant Parker's address. (*See* Ex. "A" Attach. Pl.'s Resp. [41-2] Mot. Summ. J.) Furthermore, there is no evidence before this Court of any unreasonable conduct on the part of Defendant Parker. This Court finds that Plaintiff's allegations against Defendant Parker are conclusory without one scintilla of evidence to support them.

## RECOMMENDATION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether the Defendants violated any of Plaintiff's constitutional rights. Plaintiff has failed to establish genuine issues of fact regarding any transcription of his plea and sentencing hearing in support of his constitutional claims. Furthermore, Plaintiff has not presented any evidence to this Court that shows how his lack of possession of his plea and sentencing transcript has caused his constitutional rights to be violated or prejudiced him in any way, as Plaintiff enjoyed full access to the Mississippi Courts. Finally, at very best, Plaintiff's claims and evidence amount to mere negligence, and negligence will not support a cause of action under section 1983. Accordingly, the Court recommends that Defendants are entitled to summary judgment, and Plaintiff's official and individual

capacity claims should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the   <u>25th</u>   day of February, 2010.

<u>          s/ John M. Roper           </u>
CHIEF UNITED STATES MAGISTRATE JUDGE